IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CARPENTER V. SPEER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CAROL CARPENTER, APPELLEE,

V.

WILLIAM SPEER AND THERESA BITTERMAN, APPELLANTS.

Filed March 22, 2022.    No. A-21-511.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed.

William Speer and Theresa Bitterman, pro se.

James V. Duncan, of Sennett, Duncan, Jenkins & Wickham, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

William Speer and Theresa Bitterman appeal from an order of the district court for Custer County setting aside a quitclaim deed and restoring the property to Carol Carpenter on the basis of mistake, undue influence, and fraud. The order also awarded Carpenter a judgment in the amount of $18,215 for breach of contract and unjust enrichment. Based on the reasons that follow, we affirm.

## BACKGROUND

In 2003 Carpenter purchased 40 acres of real estate in rural Custer County after her husband died. She used her husband's life insurance proceeds for the downpayment and took out a mortgage for the remaining amount. The deed to the land and the debt on the property were solely in Carpenter's name. The property has a house on it, as well as several other buildings. Carpenter

- 1 -

purchased the property because the house was big enough for her son, Speer; his wife, Bitterman; and their children to all live with her.

In March 2018, Speer prepared a quitclaim deed, which Carpenter signed, conveying the property solely to Speer. Carpenter claims that she did not know that she had signed a deed giving the property to Speer and she did not find out until sometime later.

In May 2019, Carpenter filed a complaint to set aside deed asking the court to set aside the quitclaim deed on several grounds: incapacity, undue influence, fraud, and mistake. The complaint also alleged causes of action for breach of contract and unjust enrichment, requesting damages of at least $8,825.

A trial on the complaint followed. The evidence showed that after purchasing the real estate in 2003, Carpenter lived in the home on the property with Speer and Bitterman (appellants) and their children for 10 to 11 years and then moved out. While living with appellants, Carpenter paid the monthly mortgage payments with her social security income, which was her only source of income. Carpenter did not remember what expenses, if any, appellants paid. She later testified that she paid the utility bills and bought her share of groceries.

Carpenter continued to pay the monthly mortgage payment after she moved out and appellants continued to live in the house. At some point, Carpenter realized she needed income from the property in order to pay her expenses and the mortgage payment. She asked appellants to pay rent, or alternatively, she would have to sell the property. In 2017 appellants signed a lease agreement to pay rent in the amount of $925 per month.

In August 2017, appellants made their first and only rental payment of $925. After the first rent payment, Carpenter agreed to reduce the rent to $775 per month because appellants were paying to have a well fixed on the property. Appellants paid $775 each month until June 2018 and then began paying varying amounts. The last rent payment appellants made was in April 2019 for $340, even though they continued to live in the house. Carpenter presented evidence that when using a monthly lease rate of $775 per month, appellants have missed rent payments totaling $26,215. In addition, they owed $860 in late fees and $66,885 in late charges under the lease agreement. The total owed for past due rent, late fees, and late charges was $93,960.

At some point, Carpenter told appellants that she needed to sell the property because she could not afford to pay the mortgage without their rent payments. She asked them to move out but they refused.

While testifying, Carpenter was shown the quitclaim deed purporting to show that she transferred the property at issue to Speer on March 12, 2018. She denied ever giving the property to Speer or signing any paper that would give Speer the property. When Carpenter was told that she was the grantor on the quitclaim deed, she indicated she did not know what that meant. She acknowledged that her signature was on the deed but did not know what the signature was for.

Carpenter remembered going to the courthouse with appellants on March 12, 2018. She said Speer told her they were putting her name and his name on a car title. She remembered Speer going to a back room in the courthouse and typing up a paper. She testified that when he brought the paper to her he just told her where to sign her name. She did not read the paper and signed it, believing it was something to do with a car.

When asked if she knew what she was signing, she said it was something to do with a car title. When asked what effect the paper she signed would have, Carpenter replied, "I thought he'd

help me with expenses and the mortgage if I got sick or something like that." She indicated that when signing the paper at the courthouse she did not intend for her name to no longer be on the deed to the property. When counsel told her that the paper she signed was a quitclaim deed making Speer the sole owner of her property, Carpenter stated she did not know that was what she signed. She stated she never intended to sign the property over to Speer. She said that the property was the only thing she owned of value and she would never give it to only one of her five children. She further testified that she trusted Speer at the time and believed he was telling her the truth and relied on what he told her when she signed the quitclaim deed.

Carpenter testified that when she first purchased the property, the parties talked about Speer someday owning the property after his credit rating improved and he could get a loan, but there was not any serious discussion about it or any agreement reached. Carpenter testified that she always expected that Speer would pay her for the property. She further stated it was never her intention to put Speer's name on the deed unless he had the money to buy it from her.

Carpenter also testified about the status of her health on March 12, 2018. She stated she was taking several medications, including two kinds of insulin for diabetes, pain medication, and medication to control diarrhea, as well as other medications she could not remember. She had surgeries on her back in 2016 and October 2017 and was still having pain after those surgeries, as well as occasional dizziness if she walked too much. She stated that she was not feeling well during the time they were in the courthouse on March 12. She told appellants that she needed to go home because she needed an insulin shot and something to eat. She stated that when she needs insulin and does not get it, she feels sick and gets dizzy. She also stated that when her blood sugar level is off, it affects her ability to understand what is going on, and that is what happened at the courthouse. Carpenter also admitted to having some problems with memory around March 2018. She had periods of time that she did not remember, which her doctor attributed to high blood pressure. She admitted that her memory has deteriorated over the years. At the time of trial she was 83 years old and was still living on her own.

Carpenter testified that at some point after March 12, 2018, she was talking with Bitterman about selling the property because she could not afford it without rental income. During that discussion Bitterman told Carpenter she could not sell the property because her name was not on the deed. Carpenter testified that this was when she learned that Speer's name was on the deed and her name was not on the deed. She continued to make the mortgage payments even after learning her name was no longer on the deed.

On cross-examination, Carpenter testified that on March 12, 2018, she and appellants went to lunch and then to the library to print off paperwork. She said appellants did not force her to go to the library and she did not ask to go home before they went to the library. After the library, the three of them went across the street to a title company and then to the register of deeds office at the courthouse. Carpenter testified she was not forced to go to the title company or to the courthouse. During the time at the courthouse, Carpenter started to feel sick.

Bitterman testified that when Carpenter purchased the property, Speer and Carpenter had an agreement that she would pay the mortgage and appellants would pay for utilities and groceries. Appellants could not afford to pay the mortgage at the time of purchase. Bitterman testified that Carpenter had wanted Speer on the deed at the time of purchase and at closing they both signed all

the paperwork. She testified that it was not until later that she and Speer found out that Speer's name was not on the deed.

Bitterman also testified about the events on March 12, 2018, the day the quitclaim deed was signed giving Speer title to the property. She testified that appellants took Carpenter to lunch and told her that Speer's name was not on the deed. Carpenter asked what needed to be done to put his name on the deed. Speer found out what they needed to do and after lunch they went to the library to get the necessary form. They had to walk across the street to the title company to get the legal description of the land and then back to the library to finish filling out the paperwork. Bitterman testified that during this time, Carpenter was in good spirits and was feeling fine.

Bitterman stated that the three of them went to the register of deeds office at the courthouse next, where they were told they had the wrong document. An employee in the register of deeds office took the three of them into a back room to let them fill out the correct document for a quitclaim deed. Bitterman admitted that although the quitclaim deed says it was prepared by Carpenter, it was actually prepared by the register of deeds employee. Bitterman testified that the employee then explained the document to Carpenter and told her three times that if she signed it, she would have no control over the property anymore. The employee had the quitclaim deed in her hand when she was talking to Carpenter and then handed it to her and she signed it. Carpenter denied that the employee told her by signing the document her name would no longer be on the deed and she would not have control over the property anymore.

Bitterman testified that Carpenter never indicated that day that she was not feeling well or was in pain, nor did she ask to go home. She testified that they stopped at two stores after leaving the courthouse before taking Carpenter home.

On cross-examination, Bitterman testified that when Carpenter obtained the loan for the property in 2003, Speer was going to take out the loan jointly with Carpenter but having his name on the loan would have made the interest rate higher because of his bad credit rating so only Carpenter took out the loan. She also testified that Speer was supposed to be on the deed with Carpenter and when his credit improved he was going to take over the mortgage. Bitterman acknowledged that in the 16 years between the time the property was purchased and the filing of this lawsuit, Speer never applied for a home loan.

Bitterman agreed with Carpenter that based on the lease agreement, the total amount due for past rent, late fees, and late charges totaled $93,960. However, she testified that at the time the lease was signed, Carpenter said she would not assess any late fees or late charges.

The trial court found that Carpenter had sufficiently proven that Speer had obtained title to the property as a result of undue influence, fraud, and mistake. It found there was insufficient evidence to support a claim that Carpenter was incapacitated at the time she signed the deed. The court set aside the March 12, 2018, deed and restored title to the property to Carpenter.

The court further found that appellants had breached the lease agreement with Carpenter by failing to pay rent as agreed and that appellants had been unjustly enriched by living in the home for 12 months without paying any rent to Carpenter after termination of the lease agreement. The trial court entered judgment against appellants in the amount of $7,115 for past due rent and $11,100 for unjust enrichment, with $925 accruing each month after entry of judgment until appellants vacated the property.

## ASSIGNMENTS OF ERROR

Appellants assign that the trial court erred in (1) excluding or otherwise disregarding relevant evidence in determining whether a "meeting of the minds" had taken place between the parties prior to signing the quitclaim deed and whether there was undue influence, and (2) making unwarranted assumptions that were not supported by the record resulting in a finding of fraud.

## STANDARD OF REVIEW

An action to set aside a deed sounds in equity. *Benell v. Ross*, 19 Neb. App. 514, 808 N.W.2d 657 (2012). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

Appellants' first assignment of error relates to the trial court's finding that Carpenter met her burden to prove her claims of mistake and undue influence. They argue that the court failed to consider all the evidence presented by both parties and instead viewed the evidence "through a critical lens seemingly against the Appellants." Brief for appellants at 11. Appellants acknowledge that there was conflicting evidence, but argue that the court disregarded relevant evidence despite its obligation to look at the totality of the evidence.

We first address appellants' argument that the trial court erred by disregarding relevant evidence in determining whether undue influence existed. Appellants argue that the court failed to take into consideration their evidence that showed they did not control the will of Carpenter in an unlawful or fraudulent manner or force her into signing the deed.

The elements which must be proved in order to vitiate a transfer of property on the ground of undue influence are that (1) the transferor was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the transfer was clearly made as the result of such influence. *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017). The undue influence which will void a deed is an unlawful or fraudulent influence which controls the will of the grantor. *Id.* The court, in examining the matter of whether a deed was procured by undue influence, is not concerned with the rightness of the conveyance but only with whether it was the voluntary act of the grantor. *Id.*

The burden is on the party alleging the execution of a deed was the result of undue influence to prove such undue influence by clear and convincing evidence. *Id.* Appellants seem to believe that the burden is "the greater weight of the evidence," but the burden is actually "clear and convincing evidence." Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; instead, there must be a solid foundation of established facts on which to rest the inference of its existence. *Id.*

In a claim of undue influence in an action to set aside a deed, it is not necessary for a court in evaluating the evidence to separate each fact supported by the evidence and pigeonhole it under

one or more of the four essential elements. The trier of fact should view the entire evidence and decide whether the evidence as a whole proves each element of undue influence. See *id.*

There was conflicting evidence about the events that led up to Carpenter signing the deed. There is no indication that the court did not consider the evidence presented by both parties. Appellants basically argue that the court did not consider all the evidence presented because if it had, it would not have found that Carpenter was unduly influenced into signing the deed.

In considering Carpenter's cause of action for undue influence, the trial court found that Carpenter trusted Speer and that based on their past relationship, she had no reason to believe her son would not act in her best interest. It further found that the manner in which the transfer was obtained (discussing the deed at lunch and immediately after, going to get the quitclaim deed prepared and executed) seriously impaired Carpenter's ability to exercise good judgment before signing the document. The court also noted that appellants were not paying rent to Carpenter and she had asked them to move out. They knew that the property might be sold so they wanted the deed executed so they could not be forced to leave the property. The trial court found that Carpenter met her burden to prove undue influence by clear and convincing evidence.

We additionally note that Carpenter testified she was in pain and not feeling well during the time they were at the courthouse. She needed an insulin shot, and when her blood sugar level is off, she feels sick and gets dizzy and it can affect her mentality. Further, Carpenter stated she would have never knowingly given the property to only one of her five children.

As set forth above, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Benell v. Ross*, 19 Neb. App. 514, 808 N.W.2d 657 (2012). Upon our de novo review, there is sufficient evidence in the record to support the trial court's finding that Carpenter met her burden to prove undue influence and we give deference to the trial court's acceptance of Carpenter's version of the facts over appellants' version. Appellants' argument fails.

Because we find that the trial court did not err in setting aside the quitclaim deed based on undue influence, we need not address whether the evidence was sufficient to set aside the quitclaim deed based on mistake and fraud. See *In re Estate of Hutton*, 306 Neb. 579, 946 N.W.2d 669 (2020) (appellate court is not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

## CONCLUSION

We conclude that the trial court did not err in setting aside the March 12, 2018, quitclaim deed and restoring the property to Carpenter. Accordingly, the trial court's order is affirmed.

AFFIRMED.